_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
December 22, 2021

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * * *

| | |
|---|---|
| In re: | ) Case No.: 21-50226-gs |
| | ) Chapter 11 |
| NANYAH VEGAS, LLC, | ) |
| | ) Hearing Date and Time |
| Debtor. | ) Date:  October 14, 2021 |
| _____ | ) Time: 10:30 a.m. |

**MEMORANDUM DECISION RE: MOTION TO DISMISS**

On October 14, 2021, the court held its hearing on the motion to dismiss the above-captioned bankruptcy case (ECF No. 28) (Motion) filed by creditors Peter Eliades, Peter Eliades as Trustee of the Eliades Survivor Trust of 10/30/08, Eldorado Hills, LLC, and Teld, LLC (collectively, the Movants).  After hearing argument from the parties and delivering an oral tentative ruling, the court took this matter under advisement.  For the reasons stated below and on the record at the October 14, 2021 hearing, the court will grant the Motion.

**Facts**

Debtor Nanyah Vegas, LLC ("Nanyah") was formed in 2007 to effectuate a $1.5 million investment in Eldorado Hills, LLC ("Eldorado").[1]  In turn, Eldorado invested the funds in real property located near Boulder City, Nevada.[2]  Nanyah has no employees,[3] no day-to-day business operations,[4] and no income.[5]

//

---

[1] ECF No. 35, Exhibit 1, p. 16, Transcript p. 11:21-24
[2] *Id.* at Exhibit 3, p. 59:14-15.
[3] *Id.* at Exhibit 1, p. 17, Transcript p. 12:14-15.
[4] *Id.* at p. 19, Transcript p. 14:9-12.
[5] *Id.* at Transcript p. 14:15-17.

Eldorado had two original members when formed in 2005: Go Global, Inc., owned by Carlos Huerta, and The Rogich Family Irrevocable Trust ("Rogich Trust").[6]   In 2008, Teld, LLC acquired a 60% interest in Eldorado, resulting in Go Global, Inc. no longer holding an interest in Eldorado and the Rogich Trust owning 40% of Eldorado.[7]  Nanyah maintains that the documents memorializing these transactions included provisions pursuant to which the Rogich Trust agreed to assume Eldorado's obligation to repay Nanyah's $1.5 million investment, or pay Nanyah its percentage interest in Eldorado.[8]  In 2012, the Rogich Trust purportedly assigned its membership interest in Eldorado to The Eliades Survivor Trust of 10/30/08 ("Eliades Trust").[9]  Nanyah maintains this assignment was subject to its claims.

On July 31, 2013, having neither received distributions from Eldorado nor repayment of its investment, Huerta, Go Global, Inc. and Nanyah sued Eldorado and the Rogich Trust in state court.[10]  In 2016, Nanyah commenced a second lawsuit against Teld, Peter Eliades, the Eliades Trust (together, the Eliades Defendants) and Sigmund Rogich, the Rogich Trust and Imitations, LLC (together, the Rogich Defendants).[11]  The two lawsuits were subsequently consolidated in 2017.[12]  In May of 2018, the Rogich Defendants and the Eliades Defendants were awarded partial summary judgment as to two of Nanyah's claim(s).[13]  On October 5, 2018, the state court granted summary judgment in favor of the Eliades Defendants.[14]  In September 2019, the state court granted summary judgment in favor of the Rogich Defendants, and granted Eldorado's motion to dismiss.[15]  The defendants were awarded judgment in the amount of their attorneys' fees and costs.[16]

---

[6] *Id.* at Exhibit 3, p. 59:15-16.
[7] *Id.* at p. 59:20-27.
[8] *Id.* at pp. 59:28-60:3.
[9] *Id.* at p. 63, ¶ d.
[10] *Id.* at Exhibit 4.
[11] *Id.* at Exhibit 6, p. 102.  Although based on the record presented it is unclear to the court what role defendant Imitations, LLC played in this dispute, that fact is not relevant to the court's decision.
[12] *Id.* at Exhibit 6.
[13] *Id.* at Exhibit 7.
[14] *Id.* at Exhibit 3.
[15] *Id.* at Exhibit 8.
[16] *Id.* at Exhibit 9.

Nanyah appealed the judgment and the order granting summary judgment without posting a bond.[17]  With no bond having been posted, the defendants commenced the process of executing on Nanyah's litigation claims against Eldorado and the Eliades Defendants.[18]  Nanyah filed this bankruptcy proceeding approximately one month prior to the scheduled sale of those claims.  At the debtor's § 341(a) meeting of creditors held on April 26, 2021, the debtor's representative, Andrew Heyman, testified that the Chapter 11 was filed to "protect and preserve the assets of the debtor, such as they are."[19]

Nanyah's bankruptcy schedules reflect that the company's only asset is its appeal.[20]  This was confirmed by Yoav Harlap, Nayah's sole member, during the continued § 341(a) meeting of creditors.[21]  When asked how Nanyah is paying its attorney fees with no assets and no income, Mr. Harlap confirmed that he personally is providing the funding.[22]  At the initial § 341(a) meeting of creditors, Mr. Harlap testified that if Nanyah did not prevail on its appeal the only source of funding for a chapter 11 plan would be a loan from him.[23]

Nanyah's schedules list liabilities of approximately $1.5 million.[24]  Scheduled creditors are the prevailing defendants in the state court litigation, Mr. Harlap for personal loans to the debtor, and the Internal Revenue Service with a priority unsecured claim scheduled in an unknown amount.[25]  Though initially filed as a standard chapter 11, Nanyah later amended its petition to reflect that it qualifies as a small business debtor under 11 U.S.C. § 101(51D).[26]

The deadline for filing proofs of claim in Nanyah's case expired on July 26, 2021.  Although nine proofs of claim were filed, all but one were filed by prevailing defendants in the state court litigation.  That claim was filed by the Internal Revenue Service, asserting a

[17] *Id.* at Exhibit 12.
[18] *Id.* at Exhibit 10.
[19] *Id.* at Exhibit 1, p. 17, Transcript p. 12:10-13.
[20] ECF No. 1, pp. 10-13.
[21] ECF No. 35, Exhibit 2, p. 47, Transcript p. 9:3-5.
[22] *Id.*, Transcript p. 9:11-17.
[23] *Id.* at pp. 26-27, Transcript pp. 21:22-22:7.
[24] ECF No. 1, pp. 15-17.
[25] *Id.*
[26] ECF No. 17, p. 2.

3

$7,000.00 claim for estimated taxes owing for 2018-2020 ($3,000.00 priority) and 2014-2017 ($4,000.00 general unsecured).[27]

**Analysis**

Under 11 U.S.C. § 1112(b), a bankruptcy court may dismiss a Chapter 11 case "for cause." "Although section 1112(b) does not explicitly require that cases be filed in 'good faith,' courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal."[28] Courts measure a debtor's good faith by examining "'an amalgam of factors and not…a specific fact.'"[29] Those factors may include "any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions.'"[30] The ultimate question is whether a debtor filed its chapter 11 petition to "effect a speedy, efficient reorganization" or "to unreasonably deter and harass creditors."[31] Towards this end, "if it appears at the outset there is no reasonable expectation that the financial situation of the debtor can be successfully repaired through the reorganization process, it is clear that such case is ripe for dismissal for 'cause,'…."[32]

Movants maintain that Nanyah filed this case merely to avoid posting a bond during its appeal of the state court judgment. They argue that this constitutes bad faith warranting dismissal. But as the Ninth Circuit Bankruptcy Appellate Panel has noted, "neither the Ninth Circuit Court of Appeals nor [the Ninth Circuit Bankruptcy Appellate Panel] has held that filing a bankruptcy petition in lieu of posting an appeal bond is ipso facto bad faith for purposes of dismissal under § 1112(b)."[33] "Indeed, to make such a finding would be at odds with the

---

[27] Additionally, the court notes that, based on its review of the case docket, it appears Nanyah is several months behind in its monthly operating reports, the most recent having been filed for July 2021.
[28] *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994) [citing cases].
[29] *Id.* (quoting *In re Arnold*, 806 F.2d 937, 939 (9th Cir.1986)).
[30] *In re Marshall*, 721 F.3d 1032, 1048 (9th Cir. 2013) (quoting *Phoenix Piccadilly, Ltd. v. Life Ins. Co. of Va. (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393, 1394 (11th Cir.1988)).
[31] *Marsch*, 36 F.3d at 828.
[32] *In re Mense*, 509 B.R. 269, 284 n.35 (Bankr. C.D. Cal. 2014) (quoting *Matter of Bock*, 58 B.R. 374, 378–79 (Bankr.M.D.Fla.1986)).
[33] *In re Hanna*, 2018 WL 1770960, at *5 (B.A.P. 9th Cir. Apr. 13, 2018).

4

directive that courts look at the totality of circumstances in determining bad faith."[34]  Instead, the Ninth Circuit has observed that "[s]everal bankruptcy courts have held that a debtor may use a Chapter 11 petition to avoid posting an appeal bond if satisfaction of the judgment would severely disrupt the debtor's business."[35]

However, the Ninth Circuit has also recognized that a petition filed to avoid posting an appeal bond is improper if the judgment against the debtor can be paid with nonbusiness assets.[36] At least one court in the Ninth Circuit has reviewed the following factors "[w]hen a debtor files chapter 11 to dodge the requirement for an appeal bond":

> (1) Whether the debtor is a viable business which would suffer severe disruption if enforcement of the judgment was not stayed; and the chapter 11 petition was filed to preserve its status as an ongoing concern and to protect its employees and creditors;
>
> (2) Whether the debtor had financial problems on the petition date, other than the adverse judgment;
>
> (3) Whether the debtor has relatively few unsecured creditors, other than the holder of the adverse judgment;
>
> (4) Whether the debtor has sufficient assets to post a bond to stay the judgment pending appeal;
>
> (5) Whether the debtor acted in good faith to exhaust all efforts to obtain a bond to stay the judgment pending appeal;
>
> (6) Whether the debtor intends to pursue an effective reorganization within a reasonable period of time, or whether the debtor is unwilling or unable to propose a meaningful plan until the conclusion of the litigation; and
>
> (7) Whether assets of the estate are being diminished by the combined ongoing expenses of the debtor, the chapter 11 proceedings, and prosecution of the appeal.[37]

---

[34] *In re Bowers Inv. Co., LLC*, 553 B.R. 762, 770 (Bankr. D. Alaska 2016).

[35] *Marsch*, 36 F.3d at 828; *see also Windscheffel v. Montebello Unified School District (In re Windscheffel)*, 2017 WL 1371294 (B.A.P. 9th Cir. Apr. 3, 2017); *Rocco v. King (In re King)*, 2008 WL 8444814 (B.A.P. 9th Cir. Mar. 12, 2008); *In re Zaruba*, 2007 WL 4589746 (Bankr. D. Alaska Dec. 28, 2007).

[36] *Marsch*, 36 F.3d at 828-29 [citing cases].

[37] *Mense*, 509 B.R. at 279–81 [citations omitted].

5

1
2
3
4
5
6
7

In this case, the court need not examine these factors in detail.  "At its core, reorganization through Chapter 11 is intended by Congress to permit a debtor to pay its creditors, retain its employees, and preserve the equity of its investors."[38]  Nanyah has no employees.  It has no day-to-day operations and no income.  By its sole member's own admission, Nanyah is simply an investment vehicle.[39]  The only other non-insider creditor is the IRS for an estimated $7,000 in taxes.  Nanyah's only asset is the appeal of the Movants' judgment and it has no money of its own to fund either the appeal or this bankruptcy.

8
9
10
11
12

This is simply a dispute between two groups of parties stuck in litigation.  Nanyah wants to continue the litigation despite entry of an adverse judgment.  Again, the mere fact that this is really a two-party dispute does not condemn the filing as bad faith.[40]  "Courts that find bad faith based on two-party disputes do so where 'it is an apparent two-party dispute that can be resolved outside of the Bankruptcy Court's jurisdiction.'"[41]

13
14
15
16
17
18
19
20
21
22
23
24

The court is aware of the decision in *In re Sullivan*¸ in which the BAP reversed dismissal of an individual's bankruptcy as a bad faith filing early in the case.  The bankruptcy court concluded in *Sullivan* that there was no possibility of a confirmable plan based on the judgment creditor's statement that it would never vote for confirmation.  The BAP held that the limited record before the bankruptcy court at that stage did not support a finding of bad faith despite the judgment creditor's argument that it was a two-party dispute.[42]  In sharp contrast to Nanyah, Mr. Sullivan had considerable assets, had been using exempt assets to fund a litigation that was continuing, and had an annual salary of $200,000.  The BAP recognized the debtor's valid bankruptcy interest in protecting his assets and providing for an orderly liquidation.[43]  Moreover, the debtor stated an intent to file a plan within the exclusivity period but was met with the motion to dismiss before he could file his plan.  The BAP was not persuaded by the creditor's

25
26
27
28

[38] *In re Mohave Agrarian Grp., LLC*, 588 B.R. 903, 915 (Bankr. D. Nev. 2018) (citing *United States v. Whiting Pools, Inc. (In re Whiting Pools, Inc.)*, 462 U.S. 198, 203 (1983)).
[39] ECF No. 35, Exhibit 2, p. 46, Transcript p. 8:22-23.
[40] *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 616 (B.A.P. 9th Cir. 2014).
[41] *Id.* (quoting *Oasis at Wild Horse Ranch, LLC v. Sholes (In re Oasis at Wild Horse Ranch, LLC),* 2011 WL 4502102 at *10 (9th Cir. BAP Aug. 26, 2011)).
[42] *Id.* at 615.
[43] *Id*. at 616.

declaration that it would never support a plan, particularly when faced with the possibility of conversion to chapter 7.[44]  Finally, the BAP also noted that Mr. Sullivan had a number of other creditors, including family members, whose debts were not challenged at that time, negating the argument that there was only a two-party dispute.[45]

In this instance, there is no business to reorganize, no other assets to protect or administer, and nothing shall take place in this bankruptcy apart from the appeal.  Unlike the situation in *Sullivan* where the record suggested the possibility of some reorganization based on the debtor's assets and income, Nanyah has nothing of its own with which to effectuate a resolution in bankruptcy.  If Nanyah wins the appeal, the judgment creditors disappear and there is no reason to proceed in chapter 11 given the limited (and estimated) amount owed to the IRS.  If the appeal is unsuccessful, the likely outcome is dismissal or conversion, not confirmation of a plan as there will be no asset and there is no income or ongoing business.  In short, Nanyah is not using the bankruptcy to reorganize, only to stay collection.

Preserving an asset such as Nanyah's litigation claims by filing bankruptcy is not per se bad faith.  But it must be part of an actual attempt to reorganize (or liquidate).  In this instance, the bankruptcy filing is merely a litigation tactic.  The sole reason for filing this case was to continue Nanyah's appeal at the expense of its judgment creditors without posting a bond.  Nanyah's lack of funds or assets would ordinarily weigh heavily in favor of a good faith filing to permit it to proceed with its appeal.  But the total absence of any business or other assets only confirms that this is simply a discrete litigation dispute rather than a reorganization.  Nanyah continues its existence solely on Mr. Harlap's discretion.  He is willing to fund Nanyah's appeal and chapter 11 fees.  This is some evidence of the availability of nonbusiness assets to post a bond pending the appeal.  This is what should be done to continue the appeal, not invoke the automatic stay by filing a chapter 11 bankruptcy.

---

[44] *Id*. at 617-18.
[45] *Id.*

7

The court concludes that Nanyah did not file this bankruptcy to "effect a speedy, efficient reorganization," but rather to unreasonably deter its judgment creditors.[46]  Accordingly, the court finds that the bankruptcy was filed in bad faith and that cause exists under § 1112(b).  The court has considered whether conversion or dismissal is in the best interests as required under § 1112(b).  As the matter is truly a two-party dispute, there is no benefit to conversion to chapter 7.  The court will, therefore, dismiss the case.  An order granting the Motion and dismissing this case will be entered separately.

* * * *

**Copies sent to all registered parties via CM/ECF ELECTRONIC NOTICE.**

# # #

---

[46] Courts have held that dismissal for bad faith is appropriate where the bankruptcy case was filed solely as a litigation tactic.  *See Prometheus Health Imaging, Inc. v. United States Trustee (In re Prometheus Health Imaging, Inc.)*, 705 Fed.Appx. 626 (9th Cir. 2017); *Greenberg v. United States Trustee (In re Greenberg)*, 2017 WL 3816042 (B.A.P. 9th Cir. Aug. 31, 2017); *St. Paul Self Storage Ltd. Partnership v. The Port Authority of the City of St. Paul (In re St. Paul Self Storage Ltd. Partnership)*, 185 B.R. 580, 582–83 (B.A.P. 9th Cir. 1995); *In re Silberkraus*, 253 B.R. 890, 902–03 (Bankr. C.D. Cal. 2000).